IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS A. AYALA-COLON SUCRES., INC., **Plaintiff**, v. BREAK BULK SERVICES, LLC, INCHCAPE SHIPPING SERVICES, INC., **Defendants**, v. INCHCAPE SHIPPING SERVICES, INC., **Counter Claimant**, v. LUIS A. AYALA COLON SUCRES., INC., **Counter Defendant.** | **Civil No.** 11-2022 (FAB) |

**DEFAULT JUDGMENT**

**INTRODUCTION**

Luis A. Ayala-Colon Sucres., Inc., (hereafter "AYACOL") has filed a motion requesting entry of judgment by default. The Court has reviewed the Complaint (Docket 1), the Summons (Dockets 3, 6 & 10), Motion for Entry of Default (Docket 8), and after hearing the testimony of Luis A. Ayala-Bennazar, the Court finds that:

This is an action in Admiralty and Maritime jurisdiction pursuant to 28 U.S.C. § 1333 and within the meaning of Rule 9(h);

Civil No. 11-2022 (FAB)                                                           2

it is an action that arises out of a transaction that is maritime in nature.

On October 14, 2011, AYACOL filed a Complaint in admiralty against Break Bulk Services LLC ("Break Bulk") and Inchcape Shipping Services, Inc. ("Inchcape") demanding payment of $57,580.67 for unpaid stevedoring services rendered consisting of the unloading of lumber on board the barge MORBO 250-8 which was being towed by the tug EL PUMA GRANDE. Process was properly served on both defendants. (Dockets 6 & 10)

On November 28, 2011, AYACOL timely requested entry of default against Break Bulk pursuant to Rule 55(a). On November 29, 2011, the Clerk of the Court entered default accordingly. (Docket 9)

On November 9, 2011, Inchcape filed an answer to the complaint and a counterclaim against AYACOL. (Docket 5) On November 28, 2011, AYACOL filed a motion to dismiss Inchcape's counterclaim. (Docket 7) On January 31, 2012, the Court referred AYACOL's motion to dismiss to a magistrate judge for a Report and Recommendation ("R&R").

On January 18, 2012, AYACOL moved the Court for the setting of a Rule 55(b)(2) default hearing. (Docket 12) A default hearing was scheduled for February 9, 2012, but was later set aside pending the resolution of the motion to dismiss the counterclaim filed by AYACOL. (Docket 14)

Civil No. 11-2022 (FAB)                                                3

Magistrate Judge Marcos Lopez issued a R&R recommending that the Court deny AYACOL's motion to dismiss.  (Docket 16)  On September 25, 2012, the Court adopted the magistrate judge's R&R and denied AYACOL's motion to dismiss the counterclaim. (Docket 17)

On November 13, 2012, AYACOL filed a second motion for setting of a default hearing. (Docket 19) The default hearing was scheduled for January 25, 2013 and then continued for February 15, 2013. (Dockets 20 & 21)

On February 15, 2013, the default hearing was held.  Mr. Luis A. Ayala-Bennazar, Vice-President of Operations in the Ponce Area for AYACOL, testified and identified the documents entered as Exhibits 1-5, which support the amount claimed in the complaint for the stevedoring services rendered by AYACOL and which remain unpaid, due and collectible.

## FINDINGS OF FACT

Mr. Ayala identified and explained in detail the documentary evidence that was submitted as Exhibits 1-5.

He testified that on January 27, 2013, he met with Freddy Zelaya, Break Bulk's President, and Leo Fontanilla, a representative of Inchcape, to discuss the possibility of hiring AYACOL to unload a shipment of lumber which was on board the barge MORBO 250-8.  AYACOL agreed to provide the services under the terms

Civil No. 11-2022 (FAB)                                                        4

and fees stated in the quote entered into evidence as Exhibit 2 and requested that a 60% deposit ($26,100.00) be made that day.[1]

AYACOL worked on the unloading of the lumber from January 28 until January 30, 2011.  The hours worked by AYACOL's gangs are stated in detail in the Statement of Facts dated January 30, 2011, which was signed by Mr. Ayala and the captain of the tug EL PUMA GRANDE and entered into evidence as Exhibit 4.  A final invoice for $57,580.67 was issued by AYACOL applying the working hours stated on Exhibit 4 to the quoted fees stated on Exhibit 2 plus other miscellaneous work and expenses necessary to complete the unloading of the lumber.[2]

The amounts claimed and substantiated through Exhibits 2, 4, and 5 refer to the services provided for the unloading of lumber and miscellaneous services, including removing containers and other objects which were interfering with the unloading of the lumber on board the barge MORBO 250-8.[3]  Thus, it was clearly established

---

[1] Even though Mr. Ayala testified that Mr. Fontanilla was present at the meeting, the Court will not rule at this time whether Inchcape was a party to the agreement because the Court does not have before it the information or evidence to make that ruling at this stage of the proceedings.

[2] Mr. Ayala testified that certain objects and containers had to be unloaded because they interfered with the unloading of the lumber.

[3] Exhibits 2, 4, and 5 refer to service quote, work done, and invoice for services rendered to the barge by AYACOL's Ponce offices, in which various items were explained in detail as to the need and concept for them for the total amount of $57,580.67, as claimed in the Complaint.

that plaintiff rendered services in the amount of $57,580.67, as claimed in the complaint.

## LEGAL DISCUSSION

Plaintiff AYACOL has obtained an entry of default pursuant to Federal Rule of Civil Procedure 55(b)(2) against defendant Break Bulk, as to the complaint filed. Default was properly entered after Break Bulk, having been properly served with process, failed to reply or plead in this case.

### A. Amount Owed for Services Rendered.

The Court held the evidentiary hearing on default on February 15, 2013. The evidence presented established the amount claimed in the complaint. Thus, plaintiff AYACOL has submitted the necessary evidence to establish that Break Bulk owes AYACOL the amount of $57,580.67 for the services it rendered.

### B. Maritime Lien for Services Rendered to the Barge MOBRO and the Tug EL PUMA GRANDE

Plaintiff AYACOL initially requested a declaratory judgment ruling that AYACOL has a lien over the tug EL PUMA GRANDE, which towed the barge to the Port of Ponce, and over the barge MOBRO 250-8, which received the servicing, and all the related services rendered by AYACOL. The Federal Maritime Lien Act, 46 U.S.C. §§ 31341-31343, grants maritime liens to particular persons based on their relationship to, or service of, a vessel. Maritime lien holders then may have the right to "bring a civil action *in rem* to enforce the lien," because a maritime lien cannot

Civil No. 11-2022 (FAB)                                                    6

be executed or divested outside of an *in rem* proceeding. Vandewaters v. Mills, 60 U.S. 82, 89, 19 How. 82, 15 L.Ed. 554 (1956); Gilmore & Black, *The Law of Admiralty* ch. IX (2d ed. 1975).

A creditor who holds a maritime lien can seek payment even if the person with whom he or she negotiated has absconded. The purpose of the maritime lien is to make readily available to a mobile borrower the secured credit that is often necessary to ensure that the vessel can obtain basic supplies or services needed for its operation. Among maritime liens of equal rank, later liens have priority. Gowen, Inc. v. F/V Quality One, 244 F.3d 64, 67 (1st Cir. 2001). The overarching goal of a maritime lien is to keep the channels of maritime commerce open by ensuring that those who service vessels have an efficient way of demanding reimbursement for their labor and are thus willing to perform the services necessary to keep vessels in operation. See Payne v. S.S. Tropic Breeze, 423 F.2d 236, 240-41 (1st Cir. 1970); Mullane v. Chambers, 438 F.3d 132 (1st Cir. 2006).

Admiralty law conceives a vessel as an entity distinct from its owner, so an *in rem* action to enforce a maritime lien is brought against the vessel itself, rather than against the owner. Puerto Rico Ports Authority v. BARGE KATY-B, 427 F.3d 93 (1st Cir. 2005) (statutory presumption in favor of maritime lien is a strong one); Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp., 120 F.3d

Civil No. 11-2022 (FAB)                                                    7

304, 313 (1st Cir. 1997).[4]  Courts have long recognized the special needs of those engaged in maritime commerce, including a justification of the use of *in rem* proceedings to hold the vessel itself as the obligor.  See, e.g., Maine Nat. Bank v. F/V Explorer, 833 F.2d 375 (1st Cir. 1987); Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co., 743 F.2d 956, 960-63 (1st Cir. 1984); Amstar Corp. v. S/S Alexandros T., 664 F.2d 904, 907-12 (4th Cir. 1981).[5]

Adequate notice of an action *in rem* against the vessel, that is, against the owner or the agent, or the proper posting notice on the vessel itself, is required before the maritime lien may be executed, but is not required at this stage when all that is resolved is a declaratory judgment that plaintiff AYACOL is entitled to a maritime lien.  See MacDougalls' Cape Cod Marine Service, Inc. v. One Christina 40' Vessel, 900 F.2d 408 (1st Cir. 1990).

In admiralty law it is presumed that the vessel owner, through a master, agent, or personal presence, will maintain

---

[4] To acquire a maritime lien on vessel, the person providing necessaries to the vessel is not required to allege or prove that credit was given to the vessel; rather it is assumed to be the case unless proven otherwise.  The party disputing existence of a lien is required to show that the claimant took affirmative actions that manifested clear intention to forego the lien.  Submission of a bill to a vessel owner's agent with whom the supplier had been dealing, rather than to the owner and the vessel, does not constitute a waiver of a maritime lien.

[5] Maritime liens are mostly secret because (ship mortgages aside) there is no registry system for such liens.  2 S. Friedell, Benedict on Admiralty §51, at 4-4 7th ed. 2000).

Civil No. 11-2022 (FAB)                                                           8

reasonable contact with and continuing interest in the status and condition of the vessel.  The owner or its representative is ordinarily in charge of the vessel, and the owner can reasonably be presumed to receive the word.  MacDougalls', 900 F.2d at 412.

It is presumed that a person such as Break Bulk has the authority to procure necessaries for a vessel.  The person with that authority may include the owner, the master, a person entrusted with management of the vessel at the port of supply, or an appointed officer or agent.  46 U.S.C. § 31341.  Thus, a person providing necessaries to a vessel, such as plaintiff AYACOL, on the order of the owner or a person authorized by the owner, is allowed a maritime lien on the vessel and may then bring a civil action *in rem* to enforce that lien.  46 U.S.C. § 31342(a).  The evidence submitted at the evidentiary hearing established that defendant Break Bulk negotiated and obtained on behalf of the EL PUMA GRANDE tug and the MOBRO 250-8 barge the services provided by plaintiff AYACOL.

Maritime liens may attach even if the vessel owner had not personally contracted for the services performed.  46 U.S.C. § 31342(a); S.E.L. Maduro (Fla.), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1482 (11th Cir. 1987).  A federal maritime lien is a unique security device serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away.  Equilease Corp. v. M/V Sampson, 793 F.2d 598, 602

Civil No. 11-2022 (FAB)                                                    9

(5th Cir. 1986).  Thus, a maritime lien does not depend on the injured party's possession of the vessel, but travels with the vessel wherever it goes, regardless of into whose hands it may pass, whether or not the lien is recorded. <u>Vandewater</u>, 60 U.S. (19 How.) at 89.

The amount owed to AYACOL by defendant Break Bulk for the servicing to both the tug EL PUMA GRANDE and to the barge MOBRO 250-8 was duly established at the evidentiary hearing.  On the basis of the credible testimony by Mr. Ayala and the documentary evidence, the Court finds that Break Bulk was entrusted to request services for the benefit of the tug and barge.  As a result, the maritime lien requested as to the tug and barge is proper.

### CONCLUSION

In accordance with Rule 55(b)(2), judgment is entered against Break Bulk Services, LLC in the amount of $57,580.67, plus interest accrued thereafter.  The Court further holds that Luis A. Ayala-Colon Sucres., Inc. is entitled to a maritime lien over the EL PUMA GRANDE tug and the MOBRO 250-8 barge for stevedoring and related services rendered at the Port of Ponce, Puerto Rico.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 26, 2013.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE