IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS A. AYALA COLÓN-SUCRES, INC.<br><br>Plaintiff,<br><br>v.<br><br>BREAK BULK SERVICES, LLC, <u>et al.</u><br><br>Defendants. | CIVIL NO. 11-2022 (PAD) |

## OPINION AND ORDER

Before the Court is plaintiff's motion for summary judgment (Docket No. 26). For the reasons explained below, the motion is GRANTED IN PART AND DENIED IN PART.

### I.  PROCEDURAL BACKGROUND

On October 14, 2011, plaintiff Luis A. Ayala-Colón Sucres., Inc. ("AYACOL") filed a complaint in admiralty against defendants Break Bulk Services, LLC ("Break Bulk") and Inchcape Shipping Services, Inc. ("Inchcape"), seeking payment of $57,580.67 for unpaid stevedoring services consisting of the unloading of lumber on board the BARGE 250-8 from January 28 until January 30, 2011 (Docket No. 1).[1] As to Inchcape, the complaint alleges it acted as the agent of Break Bulk. <u>Id</u>. at ¶¶ 7 and 9.

Inchcape answered the complaint and filed a counterclaim (Docket No. 5). It denied to have served as Break Bulk's agent for the purpose of hiring AYACOL, contending instead that it was Break Bulk's agent for the limited purpose of bringing the barge to port and clearing it with customs. It further alleges that Break Bulk hired AYACOL directly for stevedoring services. <u>Id</u>., Answer at ¶ 4 and Counterclaim at ¶¶ 1-3. As to its Counterclaim, Inchcape argues it paid wharfage

---

[1] A stevedore is defined as an entity "that hires longshore and harbor workers to load and unload a ship." *Black's Law Dictionary*, 1549 (9th ed. 2009).

Case 3:11-cv-02022-PAD   Document 39   Filed 08/18/14   Page 2 of 9

Luis A. Ayala Colón Sucres, Inc. v. Break Bulk Services, Inc. et al.
Civil No. 11-2022 (PAD)
Opinion and Order
Page 2

on behalf of Break Bulk or AYACOL, and that AYACOL, as Break Bulk's agent for stevedoring services, is responsible for reimbursing Inchcape the wharfage corresponding to the stevedoring services rendered  (Docket No. 5, Counterclaim at ¶¶ 4 and 5).

On November 28, 2011, AYACOL requested entry of default against Break Bulk pursuant to Fed.R.Civ.P. 55(a) (Docket No. 8).  On November 29, 2011, the Clerk entered default (Docket No. 10).  On February 26, 2013, following an evidentiary hearing on default, Default Judgment was entered against Break Bulk in the amount of $57,580.67 plus interest (Docket No. 25). The Court held that AYACOL was entitled to a maritime lien over the EL PUMA GRANDE tug and BARGE 250-8 for stevedoring and related services rendered at the Port of Ponce. Id. at p. 9.[2]

Luis A. Ayala-Bennazar, Vice-President of Operations in the Ponce area for AYACOL, testified at the default hearing that a representative of Inchcape was present at the meeting Ayala-Bennazar had with Break Bulk's President to discuss the possibility of hiring AYACOL to unload a shipment of lumber from BARGE 250-8. Nevertheless, the Court expressed in the Default Judgment that it could not rule on whether Inchcape was a party to the agreement because it did not have the information or evidence to make such ruling at that time (Docket No. 25 at fn. 1). AYACOL then moved to dismiss the Counterclaim (Docket No. 7).

On September 6, 2012, U.S. Magistrate Judge Marcos E. López issued a Report and Recommendation, recommending that AYACOL's motion to dismiss the counterclaim filed against it by Inchcape be denied (Docket No. 16).  The parties did not object to the Report and

---

[2] AYACOL now asks the Court to amend the Default Judgment to reflect the correct name of the barge: BARGE 250-8; not MOBRO 250-8. Because there is no dispute as to the correct name of the barge, and even Inchcape concedes that BARGE 250-8 was mistakenly named MOMBRO 250-8 (Docket No. 30, p. 5 at ¶ 23), AYACOL's request is granted.

Case 3:11-cv-02022-PAD   Document 39   Filed 08/18/14   Page 3 of 9

Luis A. Ayala Colón Sucrs, Inc. v. Break Bulk Services, Inc. et al.
Civil No. 11-2022 (PAD)
Opinion and Order
Page 3

Recommendation and, after an independent examination of the record, the Court adopted the magistrate judge's findings and recommendations (Docket No. 17).

On February 4, 2014, AYACOL moved for summary judgment, arguing that the uncontested facts show that Inchcape acted as Break Bulk's agent of tug EL PUMA GRANDE and BARGE 250-8 serviced by AYACOL, and thus, is liable for the stevedoring charges (Docket No. 26). Additionally, it requested that the counterclaim be dismissed as Inchcape was exclusively responsible for payment of wharfage and related charges.

Inchcape has vehemently opposed AYACOL's request (Docket NO. 30). In essence, it alleges it is not responsible for payment of the stevedoring services rendered by AYACOL, or for any arrangement between AYACOL and Break Bulk. Further, it asserts that its sole role as "agent" of Break Bulk was limited to bringing the vessel to port and clearing it with customs. Likewise, it claims it never intervened in the process of hiring AYACOL, and that any factual contention to the contrary, must be solved "through the proper mechanism of trial" (Docket No. 30 at pp. 2, 10-12).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is genuine if it could be resolved in favor of either party. It is material if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

Case 3:11-cv-02022-PAD   Document 39   Filed 08/18/14   Page 4 of 9

Luis A. Ayala Colón Sucres, Inc. v. Break Bulk Services, Inc. et al.
Civil No. 11-2022 (PAD)
Opinion and Order
Page 4

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

### III. DISCUSSION

#### A. AYACOL's claims against Inchcape

A thorough review of the record, mindful of the Court's duty to make all reasonable inferences in favor of the non-movant, confirms that triable issues remain as to the basic premise of AYACOL's motion: that Inchcape was acting as Break Bulk's agent and, therefore, is jointly liable for the stevedoring services provided by AYACOL.

In this case, there is no dispute over the fact that AYACOL provided the stevedoring services alleged in the complaint and that the amount claimed for those services remains unpaid, due and collectible (Docket No. 25 at p. 5). It is also uncontested that Break Bulk owes AYACOL the amount claimed in the complaint for the services rendered. Id. At this juncture, however, the record shows that a material fact exists as to whether Inchcape was a party to the agreement between AYACOL and Break Bulk *for stevedoring services* and, thus, responsible for the amount claimed. The resolution of this factual dispute requires assessment of credibility and the measured

Case 3:11-cv-02022-PAD   Document 39   Filed 08/18/14   Page 5 of 9

Luis A. Ayala Colón Sucres, Inc. v. Break Bulk Services, Inc. et al.
Civil No. 11-2022 (PAD)
Opinion and Order
Page 5

weighing of evidence, a process beyond the scope of summary judgment. See, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-52, 120 S.Ct. 2097, 2110-2011 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge") (internal citations omitted).

On the one hand, AYACOL admits Inchcape represented the vessels at the Port of Ponce *with the purpose of bringing them to port and then clearing them with customs*. It also submits as an "uncontested fact" that a representative of Inchcape (Leo Fontanilla) was present at the June 27, 2011[3] meeting where the possibility of hiring AYACOL to unload a shipment of lumber on board BARGE 250-8 was discussed.[4]

On the other hand, Inchcape admits the meeting occurred but questions the purpose of the meeting, as well as the fact that Fontanilla represented Inchcape in the meeting. Sworn Statement of Eric González, Inchcape's Operation Manager (Docket No. 30, Exh. 1). Likewise, it claims that Break Bulk *directly* hired AYACOL for stevedoring services upon Inchcape's refusal to provide those services, after Break Bulk failed to provide the pre-funding and corresponding fees requested by Inchcape. Id. at ¶ 3. Further, it asserts that Inchcape did not intervene or consent to AYACOL's employment and never acted as a general agent to Break Bulk for the vessel, or negotiated rates for stevedoring services and/or any payment agreement on behalf of Break Bulk. Id. at ¶¶ 5 and 6.

---

[3] The correct date should be June 27, 2011, not 2013. The reference to the year 2013, however, is incorrectly made throughout the motion.

[4] Moreover, and contrary to AYACOL's representation, in the Default Judgment the Court *never* concluded that a representative of Inchcape participated in the meeting. To the contrary, the Court *expressly* stated it did not have the information or evidence required to make said ruling (Docket No. 25 at fn 1).

Case 3:11-cv-02022-PAD   Document 39   Filed 08/18/14   Page 6 of 9

Luis A. Ayala Colón Sucrs, Inc. v. Break Bulk Services, Inc. et al.
Civil No. 11-2022 (PAD)
Opinion and Order
Page 6

In sum, and although the Court is not weighing the evidence, Inchcape has presented enough evidence in support of its position that it is not responsible for any agreement between AYACOL and Break Bulk regarding the stevedoring services and that it only acted as agent for the limited purpose of clearing the vessel with customs. As such, summary judgment is not appropriate.

AYACOL makes much ado about the "fact" that because Inchcape filed the berth application before customs, it is automatically liable for the payment of the stevedoring services provided by AYACOL as Break Bulk's agent (Docket No. 26 at pp. 14-18). In support of its contention, AYACOL refers to Section 1950 of the Puerto Rico Maritime Commercial Code, which provides as follows:

> [t]he owner of a vessel and the agent shall be civilly liable for the acts of the captain and for the obligations contracted by the latter to repair, equip, and provision the vessel, provided the creditor proves that the amount claimed was invested therein.
>
> By agent is understood the person intrusted [sic] with the provisioning of a vessel, or who represents her in the port in which she happens to be.[5]
>
> The agent shall also be civilly liable for the indemnities in favor of third persons which arise from the conduct of the captain the care of the good which the vessel carried; but he may exempt himself therefrom by abandoning the vessel with all her equipment and freight he may have earned during the voyage.
>
> Neither the owner of the vessel nor the agent shall be liable for the obligations contracted by the captain if the latter exceeds his powers and privileges which are his by reason of his position or should be granted him by the former.
>
> [ . . . ]

---

[5] This part of Section 1950 reads in Spanish as follows: "El propietario del buque y el naviero serán civilmente responsables de los actos del capitán, y de las obligaciones contraídas por éste para reparar, habilitar, avituallar el buque, siempre que el acreedor justifique que la cantidad reclamada se invirtió en beneficio del mismo.  Se entiende por naviero la persona encargada de avituallar o representar el buque en el puerto en que se halle."

Case 3:11-cv-02022-PAD   Document 39   Filed 08/18/14   Page 7 of 9

Luis A. Ayala Colón Sucres, Inc. v. Break Bulk Services, Inc. et al.
Civil No. 11-2022 (PAD)
Opinion and Order
Page 7

> However, if the amounts claimed were made use of for the benefit of the vessel, the owner or agent shall be liable.
>
> The agent shall select and come to an agreement with the captain, and shall act in the name of the owners, shall be bound in all the refers to repairs, details of equipment, armament, provisions, fuel, and freight of the vessel, and, in general in all that relates to the requirements of navigation.

Book III, Section II, Article I, P.R. Laws Ann. tit. 10 § 1950.

The Court is not persuaded by AYACOL's argument. First, Section 1950 does not mention stevedoring practices or the collection of unpaid services for unloading of cargo. Second, as previously explained, the extent of Inchcape's relationship with Break Bulk and whether that relationship makes Inchcape responsible for the payment of the services in question, is anything but clear in this case. Moreover, under the Dock and Harbor Act of Puerto Rico, P.R. Laws Ann. tit. 23 §§ 2101-2801, it is possible to have – since the statute does not prohibit – multiple agents for one ship's cargo. Therefore, Break Bulk could have legally contracted agents for limited purposes or different agents for different tasks, as alleged by Inchcape.

Only after determining the nature of the relationship between these entities, will the Court be able to conclude (1) that Inchcape was an agent with the limited purpose of overseeing Break Bulk's clearance procedures with customs, or (2) that Inchcape is legally responsible for the payment of stevedoring services. The emails attached in support of AYACOL's contentions do not help either. To the contrary, those would only confirm that Inchcape's participation was limited to bringing the barge to port as they only include pre-arrival data and berthing prospects for BARGE 250-8 and TUG EL PUMA GRANDE. Thus, AYACOL's request is denied.[6]

---

[6] As part of its opposition to summary judgment, Inchcape argued that this claim was time barred as, pursuant to the Puerto Rico Code of Commerce, AYACOL had six (6) months after the shipment to request payment for stevedoring services. Inchcape's argument is misplaced. Article 948(1) of the Code of Commerce states that the "following shall prescribe after one year: [a]ctions arising from **services**, **works**, provisions, and furnishing of goods or money for the construction, repair, equipment, or provisioning

<u>Luis A. Ayala Colón Sucres, Inc.</u> v. <u>Break Bulk Services, Inc.</u> *et al.*
Civil No. 11-2022 (PAD)
Opinion and Order
Page 8

### B. Inchcape's Counterclaim

As the record confirms, AYACOL unsuccessfully moved to dismiss the counterclaim at the motion to dismiss stage (Docket No. 8). The Court denied the motion to dismiss, noting it did not have before it the Port of Ponce Tariff Schedule[7] to determine whether, pursuant to those tariff rules, the vessel agents were responsible for terminal chargers incurred on behalf of the vessel owners/clients, including wharfage charges; which is common for ports to have.[8] The Court, however, allowed the parties to revisit this matter at the summary judgment stage (Docket No. 16 at pp. 6-7).

AYACOL now moves the Court to dismiss with prejudice Inchcape's counterclaim, including the "Tariff Rules and Regulations for the Port of Ponce" (the "Port of Ponce Tariff") in support of its proposition (Docket No. 27, Exh. 7). Because Inchcape failed to oppose AYACOL's request, the Court will consider it as unopposed.

A careful examination of both the Port of Ponce Tariff Schedule and the "Docking Application & Permit" filed by Inchcape at the Port of Ponce shows that the *applicant* shall be

---

of vessels, or to support the crew, to be counted **from the delivery of the goods and money**, or from the period stipulated for their payment, and from the time the services or labor were rendered, if they should not have been engaged for a definite period or voyage." P.R. Laws Ann. tit. 10 § 1910.

[7] Sections 2103, 2505 and 2902 of the Puerto Rico Dock and Harbor Act create a "politically independent corporate body with the name of Ports of the Americas Authority" to regulate the Port of Ponce, and give that entity the power to fix tariffs for, *inter alia*, wharfage.

[8] In a thorough Report and Recommendation, the Magistrate Judge further observed that "[v]essel agents have often challenged these provisions, arguing that imposing such liability forces vessel agents to absorb losses when the vessel owner does not pay the port fees (Docket No. 16 at fn.5)(citing <u>Marine Terminal Tariff Provs. Re: Liability of Vessel Agents; Pet'n for Rulemaking</u>, 1996 WL 370004 at 1-2). He further explained that the Federal Maritime Commission ("FMC") has frequently upheld such tariffs based on "factors unique to the shipping industry, including the 'normal business practice' and 'prior course of conduct' of the agents, port authorities, and vessel owners." <u>Id</u>. (quoting <u>Harrington & Co. and Palmetto Shipping & Stevedoring Co.</u> v. <u>Georgia Ports Auth.</u>, 23 S.R.R. 753 (I.D.), 1276 (FMC 1986). The FMC has also suggested that the main cause of the vessel agent's trouble with these tariffs "was that the unbridled competition among the agents themselves encourages some to foolishly decline to demand security from their customers, and then they are stuck holding the bag when the ports expect payment for their services." <u>Id</u>. at 7 (citing <u>Palmetto Shipping & Stevedoring Co.</u> v. <u>Georgia Ports Auth.</u>, 24 S.S.R. 50 (I.D.), 761 (FMC 1988) at 94-95. Therefore, the Magistrate Judge mentioned that in other ports, these tariffs have a substantive effect, which can be avoided by agents of ships by, *inter alia*, demanding security from their principals.

Case 3:11-cv-02022-PAD   Document 39   Filed 08/18/14   Page 9 of 9

Luis A. Ayala Colón Sucres, Inc. v. Break Bulk Services, Inc. et al.
Civil No. 11-2022 (PAD)
Opinion and Order
Page 9

responsible for "the payment of wharfage, dockage, damage to the property of the Port and/or any third party and all other applicable charges related to the vessel" (Docket No. 27, Exh. 1 at ¶ 4). In addition, the Schedule provides that bills are due upon presentation and are payable by the user, the vessel, the vessel owners, the vessel's agent, the stevedore or others (Docket No. 27, Exh. 7, Rule 3700).

Thus, it is clear that Inchcape, as the filing party, was responsible for paying wharfage fees upon presentation. No legal provision has been identified that would allow Inchcape to recoup the wharfage fees from the agent responsible for unloading of the cargo (AYACOL). In these circumstances, Inchcape's Counterclaim will be dismissed with prejudice.

## IV.   CONCLUSION

In view of the foregoing, AYACOL's motion for summary judgment (Docket No. 26) is GRANTED IN PART AND DENIED IN PART. Inchcape's Counterclaim is dismissed with prejudice.

**SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of August, 2014.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge